J. E. MEYERS, AS MAYOR OF THE CITY OF MINNEAPOLIS
v. HENRY N. KNOTT AND OTHERS.[1]

November 21, 1919.

No. 21,681.

**Municipal corporation — franchise ordinance — approval by mayor.**

1. A franchise ordinance, adopted under the provisions of chapter 124,

[1] Reported in 174 N. W. 842.

Laws of 1915, by a majority vote of the city council, need not be submitted to the mayor of the city for his approval.

**Same — call for special election —compliance with statute.**

2. The calling of a special election by the city council, to be conducted in all respects as required by the general election laws of the state, for the submission of a franchise ordinance to the voters of the city for ratification, to be held not less than 90 days after the filing of the acceptance of the proposed franchise by the car company, is a sufficient compliance with the provisions of chapter 124, Laws of 1915.

**Same — construction of franchise.**

3. The proposed franchise considered and *held* not to surrender, by its provisions, the old car company franchise and the obligations incurred thereunder.

**Same — consideration sufficient.**

4. The proposed franchise considered and *held* to provide for ample consideration moving to the city for the franchise and rights thereby granted to the car company, to answer the requirement of chapter 124, Laws 1915.

**Same.**

5. Such franchise provides for the regulation of the affairs of the car company by the city council, and does not nullify the same by subsequent provisions.

Action in the district court for Hennepin county to restrain defendants from calling and conducting any election under the proposed street-railway franchise or ordinance or treating the ordinance under any circumstances as a valid ordinance or contract between the city and the company. From an order, Molyneaux, J., denying his motion for a temporary injunction, plaintiff appealed. Affirmed.

*A. B. Jackson, J. E. O'Brien* and *C. J. Rockwood,* for appellant.

*C. D. Gould, W. D. Dwyer, Lancaster & Simpson* and *George B. Leonard,* for respondents.

QUINN, J.

By chapter 124, p. 166, Laws of 1915, authority is granted to the city council or other governing body of any city in this state, then or thereafter having a population of more than 50,000 inhabitants, to grant a

franchise for the construction, extension, maintenance and operation of street railways in and upon the streets and other public ways within or outside its boundaries, by pursuing the procedure and complying with the conditions therein stated and set forth. Among other things the statute, or enabling act, as it may be properly termed, provides that the franchise so authorized to be granted shall be in the form of a city ordinance and adopted by a majority vote of the city council, subject to approval or rejection by the voters of the municipality at a general or special election to be held at the time and called in the manner therein provided. Provision is made for the acceptance of the proposed franchise by the street-car company after the adoption thereof by the city council, and the filing of such acceptance with the city clerk, and the election for submission of the question of adoption to the people cannot be held until the lapse of 90 days from the date of such acceptance.

The enabling act applies to the city of Minneapolis, for it has the required population, and in due proceedings had for the purpose, the city council thereof, by a majority vote of the members, duly adopted the ordinance or proposed franchise involved in this action, by which a franchise to the defendant railway company was conditionally granted; the conditions being the acceptance thereof by the company and the ratification by the voters of the city. The company is now operating lines of street railway in and upon the streets of the city under a previously granted franchise which expires in 1923. The ordinance was adopted by the city council in conformity with rules governing its action in such matters, except that it was not submitted to the mayor for his approval or disapproval. It was so adopted on September 3, 1919, and within the time fixed by the enabling act was formally accepted by the street-car company. Thereupon the city council, by resolution, duly called an election for the submission of the question of ratification or rejection to the voters, the date thereof being fixed for December 9, 1919, which was more than 90 days after the acceptance of the street-car company had been filed with the city clerk, as required by the statute.

Plaintiff, who is the mayor of the city, then brought this action to restrain and enjoin the proposed election, upon the grounds and for the reasons presently to be stated, and he appeals from an order denying his application for a temporary injunction pending this action.

It is contended in support of the action and of the assignments of er- ror challenging the refusal of the trial court to grant a temporary injunction: (1) That the adoption by the city council of the ordinance, or proposed franchise, was not in compliance with the enabling act, in that it was not submitted to the mayor for his approval or disapproval; (2) that the election for the submission of the question of adoption to the voters was not called in the manner required by the enabling act; (3) that the proposed franchise attempts without authority to release the street-car company from all obligations under the existing franchise upon the adoption of the new; (4) that no compensation to the city is provided for as required by the enabling act; and (5) that certain other provisions of the franchise, one of which creates a rule of evidence in respect to reports of the street-car company which have been made and filed as required, are in excess of the authority granted by the enabling act and therefore void.

The courts have often been invoked, at the suit of a taxpayer or an interested legal voter, in controversies of this and analogous character, to exercise their restraining power to interrupt and stay the exercise of the legislative as well as the contractual power and authority of local municipalities, and the rule controlling their action in that respect is well settled. The courts will interfere in such matters in exceptional cases, and only when the threatened action of the municipality is forbidden by law and therefore illegal, or where the consummation thereof will in itself result in irreparable injury, cause a multiplicity of suits, or violate previously existing contractual rights. The rule applies by analogy to the case at bar. And guided thereby we have considered the various points presented in support of the action. They do not require extended discussion. None are fatal to the validity of the proceedings, and for the most part the contentions made are in essence and substance critical, presenting matters of objection to the merits of the proposed franchise, proper for consideration by the voters in passing upon the question of ratification or rejection.

The principal contention made is, that the proposed franchise was not adopted as required by the enabling act, since it was not submitted to the mayor for his approval, and that it is therefore void and should not be submitted to the voters. The defect, if any exists in the passage and

adoption of the ordinance by the council, is one of procedure, and it is doubtful whether the case in that respect comes within the rule permitting judicial interference before the completion of the municipal proceedings. But, assuming for the purpose of this case that the question is properly before us, we have no difficulty in holding that the point is without substantial merit.

1. Under the charter of the city of Minneapolis the mayor is given the power of veto of legislative enactments passed and adopted by the city council, and the veto when used annuls the enactment, unless subsequently repassed by the council by a two-thirds vote of its members. The enabling act in question provides that the power there conferred upon the city council to grant a franchise "shall be exercised only by ordinance,"[1] to be adopted by a majority vote of its members at a regular meeting thereof. The argument is that since the enabling act expressly requires that a proposed franchise shall take the form of an ordinance, to be passed and adopted by a majority of the members of the city council, adopting in that respect the legislative procedure applicable to other legislative enactments, by necessary implication the veto power of the mayor applies, requiring as a condition to a valid passage by the council the submission to the mayor for his approval. The argument is plausible but not persuasive.

In our view of the question, the express language of the enabling act properly construed conclusively answers the question adversely to plaintiff's contention. It declares that the authority to grant franchises of the kind shall be "unrestricted by any provision of statute or charter."[2] To hold that the veto power of the mayor must be taken into account, and a proposed franchise submitted to him, would necessarily nullify that part of the enabling act which declares that a majority vote of the council is all that is necessary to a valid passage of the ordinance, and would result in adding to the enabling act by judicial construction the further provision "that if the mayor shall veto any such proposed franchise, then to give it force or validity, or entitle it to submission to the voters, a two-thirds vote must be had to repass the same over the veto." This the court is not authorized to do. It is clear that the legislature, in enacting the statute, did not intend that the mayor or other chief magistrate of the municipality acting thereunder should be an official factor in the

[1][c. 124, § 6.]   [2][c. 124, § 1.]

proceedings at all. The act deals wholly with the city council, and there exists no sound reason why the mayor and his veto should take part. The franchise takes the form of an ordinance, and, as it leaves the city council, is nothing more than a contract proposed to the car company, to be ratified by the voters as they may deem for the best interests of the municipality. The veto of the mayor can add nothing to the situation, for what would be contained in a veto message, if that course were pursued, could with equal force by a public address or circular be brought to the attention of the voters, where rests the final word in the matter.

The further argument, the real foundation for what is claimed in this respect, that the authority granted by the enabling act was in fact conferred upon the city or other municipality to which it applies, and not upon the municipal council, as expressly stated in the act, is clearly not sound, though we do not conceive that the question would be in any material sense different were that point conceded. The fact remains that the enabling act does not provide for a mayor's veto, and the court is without authority to read one into the statute.

2. The contention that the election for the submission of the matter to the voters was not called in the manner required by the enabling act is not sustained. This point goes exclusively to the form and not to the substance of the proceedings. The election was called by action of the council after the car company had accepted the proposed franchise, and the date thereof is within the time specified by the enabling act. It is not a matter of substance that the date was not named in the franchise ordinance. It was formally announced by appropriate action under provisions that it be conducted in all respects as required by the election laws of the state. A special election was called and the enabling act is ample authority therefor.

3. We find no merit in the claim that the ordinance is bad, in that it attempts to surrender the old car company franchise and all obligations incurred by the company thereunder. By necessary result the old franchise will lapse and be superseded by the new when it shall come into life and operation, and the future rights of the car company and the public will be governed and controlled thereby. But this does not mean that obligations arising under the old franchise and not yet discharged by the car company will become, by operation of law or otherwise, dis-

charged without performance. The future will be under the new contract; the past under the old, until discharged by performance.

4. We find ample consideration moving to the city for the franchise and rights thereby granted to the car company to answer every requirement of the enabling act.

5. The franchise makes certain provisions for the regulation of the affairs of the car company by the city council, and it is clear that they are not all nullified and contracted away by subsequent provisions, as contended by counsel. The franchise also provides for the purchase of the car line property and a maximum valuation thereof is named. The claim is made that an improper basis was adopted in fixing the amount, in that certain properties were included therein, of which the car company was not the exclusive owner, and that the franchise improperly provides for the payment of such amount, whether the property be acquired by the city by purchase or condemnation, and, further, that the franchise provides for increasing the amount so fixed by additions and improvements, but does not provide for diminishing the same by depreciation in value or other losses. These matters have been fully considered, and we find therein nothing in violation of the terms of the enabling act which the court may declare as a matter of law to nullify the whole franchise. Some of the provisions of the franchise, not necessary to here specify particularly, are not open to the construction given them by plaintiff, and furnish no sufficient foundation for the action.

6. The other matters complained of present no material for comment. We find in the eleventh, twelfth and thirteenth points specified in the brief no reason for declaring an excessive exercise of authority by the city council. The subjects therein referred to, including the provision that statements of account prepared and filed by the car company as required by the franchise shall be treated as prima facie evidence in all actions and proceedings wherein they may be involved, are far from a character to nullify the whole franchise. Those and many of the other provisions of which complaint is made are proper for consideration by the voters, but do not rise to sufficient importance to justify judicial interference. The matter is for the people, and the courts should not, for the reasons here presented, prevent them from giving expression to their views at the polls.

This covers all that need be said. There was no error in the refusal of the trial court to grant a temporary injunction, and the order appealed from is affirmed.