STATE EX REL. SCHNEIDER, Respondent, vs. DARBY, Appellant.

*November 11—December 5, 1922.*

*Municipal corporations: City engineers as city officers: Creation of office: Election by council: Veto by mayor: Qualifications of engineer: Citizenship: Oath of office: De facto officer: Surrender of office: Quo warranto.*

1. In view of sec. 1, ch. 306, Laws 1895, providing that the statutes authorized by the act to be compiled should be *prima facie* evidence but should not preclude reference to original acts, the omission of the word "engineer" from the statute naming city officers in cities of the second, third, and fourth classes (later sec. 925—23, Stats. 1919), to which it was restored by ch. 242, Laws 1921, is considered a mere inadvertence, not evidencing a legislative intention to change the provision that city engineers should be city officers.

2. The statute, after naming city officers, continuing, "and such other officers or boards as the common council may deem necessary," clearly authorizes common councils to create the office of city engineer if it did not already exist.

3. The general rule is that where a competent vote has been taken which gives the necessary plurality or majority of the council to a candidate for a city office, the council cannot rescind its vote or reconsider its action and elect another person.

4. The right to elect a city engineer in a city of the third class was a duty imposed upon the common council, and its action was not subject to veto by the mayor.

5. Under secs. 925—27 and 926—170, Stats. 1919, although city engineers in cities of the second and third class need not be resident electors of the city, they must be citizens of the state.

6. The requirement of an official oath by city officers, under sub. (7), sec. 17.03, and sec. 925—34, Stats. 1919, is mandatory, an officer's failure to take oath vacating his office.

7. In *quo warranto* to determine the right to the office of city engineer, admissions in the answer that plaintiff had accepted the office and entered upon the discharge of the duties thereof are construed not to admit that he had taken the oath of office.

8. A legally elected city engineer failing to take the oath of office was a *de facto* officer—one who was acting under color of a known and legal election but had failed to comply with

the requirements of the statute,—but having peaceably surrendered his office, although under protest, to an intruder, he could not regain it by *quo warranto,* since in such proceeding relator relies upon his own title, which must be a legal and not merely a colorable title.

APPEAL from a judgment of the circuit court for Milwaukee county: WALTER SCHINZ, Circuit Judge. *Reversed.*

*Quo warranto.* The complaint alleged that plaintiff was a surveyor and engineer and a resident of the city of West Allis; that West Allis is a city of the third class operating under the general charter law, and as such is authorized and empowered to maintain the office of city engineer; that on the 16th day of March, 1920, the common council by a resolution employed plaintiff as city engineer for the term April 1, 1920, to April 1, 1921, and that plaintiff accepted the employment and performed the duties required of him; that on the 16th day of March, 1921, the following resolution was offered:

*"Be it resolved* by the common council of the city of West Allis that *Arthur Schneider* be and he is hereby employed as city engineer of the city of West Allis for the term of one year from the 1st day of April, 1921, to the 1st day of April, 1922."

That the resolution was referred to the judiciary committee, and thereafter on March 29, 1921, after a five-to-three vote, the mayor declared the resolution adopted; that by reason of this action by the common council relator was lawfully chosen as city engineer for the period April 1, 1921, to April 1, 1922, and was entitled to the emoluments pertaining to said office.

The complaint then alleged that relator took office as provided by the resolution; that on May 7, 1921, at a meeting of the common council, the mayor presented a pretended veto to the above resolution, which was sustained by the council by a five-to-three vote; that thereafter the council by resolution purported to elect *William D. Darby*

State ex rel. Schneider v. Darby, 179 Wis. 147.

as city engineer to hold from May 16, 1921, to April 1, 1922; that *Darby* intruded into and ousted relator from office and has since performed the duties of city engineer; and that *Darby* was not a resident of the state of Wisconsin and was not qualified to hold office.

The judgment asked was that defendant be found guilty of unlawfully holding the office of city engineer and that he be removed, and that relator be adjudged to be entitled to have, hold, and exercise the rights of said office and to have all the rights and emoluments until the 1st day of April, 1922.

The answer alleged that the resolution electing relator was a resolution incurring liability and as such was subject to the veto of the mayor; that the veto power was exercised within the time prescribed by statute; and that by reason of the foregoing, relator was not employed as city engineer for the period in question.

Defendant filed an amendment to the answer alleging, in substance, that relator failed to take an oath of office after his appointment in April, 1921; that he had never taken an oath of office after any appointment; and by reason of such failure had never qualified for office and so could be removed at the pleasure of the council.

The trial court held as matters of law that at all times mentioned in the complaint there had existed in the city of West Allis the office of city engineer; that the relator, on the 29th day of March, 1921, was the lawful incumbent of the office for the term of one year from the 1st day of March, 1920, to the 1st day of April, 1921, and until his successor should be elected and qualified; that on the 29th day of March he was lawfully re-elected to the office of city engineer for the term of one year from April 1, 1921, to April 1, 1922, and that he was entitled to hold office from April 1, 1921, until his successor was elected and had qualified; that the acts of the mayor and council pertaining to the alleged veto were null and void; that the acts on

May 10, 1921, pretending to elect *William Darby* were void and of no effect; that defendant *Darby* was unlawfully withholding the office and the rights and emoluments from the relator; and that relator was entitled to judgment establishing his right to the office for the term ending April 1, 1922, and until his successor in office shall have qualified, and excluding defendant *Darby* therefrom and from all the rights and emoluments.

Judgment was ordered accordingly.

For the appellant there was a brief signed by *Joseph E. Tierney* of Milwaukee, attorney, and oral argument by Mr. *Tierney*.

For the respondent there was a brief by *Perry & Perry* of Milwaukee, and oral argument by *Charles B. Perry*.

JONES, J.    It is one of the main contentions of appellant that there was no such office as city engineer in West Allis during any of the period while the relator was acting as engineer for the city; that it was not until the 1921 session of the legislature that "city engineer" was included in the statute defining city officers; and that relator was simply an employee of the city. It is contended that the action is governed by sec. 925—23, Stats. 1919. So far as material this section provides as follows:

"The officers of cities of the second, third and fourth classes shall be a mayor, treasurer, clerk, comptroller, attorney, assessor or one or more assessors, three or more justices of the peace, one or more constables as the common council may determine by ordinance, a physician, street commissioner, chief of the fire department, a board of public works, a board of school commissioners, one or more policemen, two aldermen and one supervisor from each ward, and such other officers or boards as the common council may deem necessary; provided, that the council, by a two-thirds vote, may dispense with the offices of street commissioner, engineer, comptroller and board of public works, and provide that the duties thereof be performed by

other officers or board, by the council or a committee thereof. . . ."

This section of the statutes has a rather curious history. The laws and statutes of 1889 designate the surveyor as a city officer. Sec. 23, ch. 326, Laws 1889; sub. 23, sec. 925*g*, S. & B. Ann. Stats. 1889. The Laws of 1893, 1895, and 1897 all include the engineer as a city officer and all provide, like the statute of 1919 above quoted, that the office may be dispensed with by the council. Sec. 11, ch. 312, Laws 1893; ch. 236, Laws 1895; sec. 1, ch. 139, Laws 1897. In Sanborn & Berryman's Wisconsin Statutes of 1898 the word "engineer" was omitted from the list of city officers, but the dispensing clause was retained unaltered, and the statute remained in substantially the same form until the Statutes of 1921, when the word "engineer" reappeared. Sec. 62.09, Stats. 1921; sec. 19, ch. 242, Laws 1921; sec. 925—23, Stats. 1898.

The question is raised whether the compiled statutes of 1898 eliminated engineers as city officers. By ch. 306, Laws 1895, authorizing a compilation of the statutes of the state, A. L. Sanborn and John R. Berryman were authorized to prepare and publish the public general laws which should be in force at the close of the first session of the legislature of 1897. The statutes were to be compiled in the general form and style of the existing annotated statutes. It was further provided, among other things:

"When published such statutes shall be *prima facie* evidence in all courts and places, and in all actions and proceedings whatsoever, as provided by section 4135, of chapter 476, of the revised statutes of 1878. But they shall not preclude reference to, nor control, in case of any discrepancy, the effect of any original act as passed by the legislature. Such statutes shall be known as the 'Wisconsin Statutes of 1898.'"

Pursuant to this authority a bill was prepared and submitted to the legislature in January, 1897. It was referred

to a joint committee of the senate and assembly.   The compilers sat and co-operated. with the committee.   In the preface to these statutes it is said:

"After two months of hard labor the committee found itself ready to report to the legislature on August 17th, the time to which adjournment was taken on the 24th of April. On the 18th of August the bill was re-referred to the committee, and on the 19th was, after consideration of a few of its sections by the committee on revision and the judiciary committee of each house, reported with a few amendments and passed, without further amendment, on the 20th of August, being approved on the same day."

There is no record in the notes of the compilers that there was an intention that city engineers should no longer be city officers.   The fact that the statute continued to contain the language authorizing city councils to dispense with the office of city engineer is quite significant in the discussion of this subject.   If no such office in cities of this class was in existence, this dispensing clause would be meaningless and absurd.   If possible, statutes should be so construed as to avoid such a result.   We have reached the conclusion that in adopting the statutes by the act passed August 20, 1897, it was not the legislative intent to change the provision that city engineers should be officers in cities of this class; but that by some mistake in copying or otherwise the word "engineer" was inadvertently omitted from the Statutes of 1898 as printed.

Moreover, if the contention of defendant's counsel as to the construction of this statute should be sustained, there remains another question.   Prior to and after the adoption of the work of the compilers, the statute, after naming city officers, contained this language: "and such other officers or boards as the common council may deem necessary."   This language clearly authorized common councils to create the office of city engineer if it did not already exist.

But it is argued by counsel for defendant that no action by the common council was taken which might be construed as creating the office. In June, 1906, an ordinance entitled "An ordinance to establish the salary of the city surveyor and city engineer of the city of West Allis and to provide for the immediate appointment of some person to act as city surveyor and city engineer" was passed and was as follows:

"Sec. 1. The mayor of the city of West Allis shall appoint at once a suitable competent person to act as and to perform all the duties prescribed in the statute for and of a city surveyor and city engineer of West Allis, and such appointment shall be confirmed by the council as other appointments are confirmed.

"Sec. 2. The person so appointed and confirmed shall perform all the duties of such office, or offices as required by the statutes and as are requested of him by the mayor and common council of the city of West Allis, under the statutes or by any other officer or officers of said city required by law, and shall receive as compensation for such services the sum of twelve dollars per day for time actually spent in such work and employment in behalf of said city of West Allis, to be paid him out of the city treasury therefor, and said person shall render true and verified accounts to the said city in respect to such services and employment."

It will be observed that this ordinance provides for the appointment of a city engineer and classes him with other city officers. It is of some significance that relator was carried on the payrolls as an officer of the city. We are convinced that in 1920 and in 1921 the office of city engineer in West Allis was authorized by the statute and that the common council had authority to elect the relator to such office.

It is not disputed that the common council duly passed in 1920 and 1921 the resolutions recited in the statement of facts. But it is claimed that the election of the relator by the action of the council in March, 1921, was vetoed by the mayor and then became of no effect. Counsel

154    SUPREME COURT OF WISCONSIN.    [Dec.

State ex rel. Schneider v. Darby, 179 Wis. 147.

rely on sec. 925—38, Stats. 1919, part of which provides as follows:

"He shall have the veto power. Should he refuse to approve any ordinance, rule, regulation or claim; or any resolution appropriating money or creating a debt or liability he shall file with the city clerk his objections in writing within five days after such ordinance, rule, regulation, claim or resolution is submitted to him for approval, such objections to be presented to the council at its next meeting. If upon the return of such veto message three fourths of all the members of the common council vote for the passage of such ordinance, rule, regulation, claim or resolution the same shall be considered legally passed notwithstanding such objections."

Relator was declared elected March 29, 1921. The veto was filed on April 4th. It is argued that the action of the council was a mere resolution of employment of one not an officer and was an appropriation of money, and was therefore subject to the veto of the mayor. Under the statutes in force in 1920 and 1921, city officers not elected by popular vote were required to be chosen by (a) nomination by the mayor and confirmation by the council, or (b) election by the council. Ordinarily the latter method was adopted in selecting the city engineer.

The weight of authority seems to be that, when a competent vote has been taken which gives the necessary plurality or majority of the council to a candidate for a city office, the council cannot rescind its vote or reconsider its action and elect another person. *State ex rel. Burdick v. Tyrrell*, 158 Wis. 425, 149 N. W. 280, and cases cited; *State ex rel. Calderwood v. Miller*, 62 Ohio St. 436, 57 N. E. 227; *Erwin v. Jersey City*, 60 N. J. Law, 141, 37 Atl. 732; 2 Dillon, Mun. Corp. (5th ed.) § 529.

We are convinced that the right to elect the city engineer was a duty imposed upon the common council and that their action was not subject to veto by the mayor. *State ex rel. Burdick v. Tyrrell*, 158 Wis. 425, 149 N. W. 280; *Erwin v.*

*Jersey City,* 60 N. J. Law, 141, 37 Atl. 732; *Huey v. Jones,* 140 Ala. 479, 37 South. 193; *Bousquet v. State,* 78 Miss. 478, 29 South. 399; 2 McQuillin, Mun. Corp. § 415.

It is claimed by counsel for relator that even if the veto was effective the defendant gained no title to the office for the reason that he was not a citizen or resident of Wisconsin when the resolution was passed relating to his election. He testified that he was not a citizen or resident of the state at that time and the court so found. By sec. 925—27, Stats. 1919, no person was eligible to an office created by the chapter who was not at the time of his election a citizen of the United States, a citizen of this state, and a resident elector of the city. However, as to engineers in cities of the second and third class sec. 926—170, Stats. 1919, provided that they were not required to be resident electors of the city; but the general provision remains that they must be citizens of the state. The conclusion is inevitable that defendant was ineligible to hold office when the purported election was held.

The argument is made by counsel for defendant that no oath of office was taken by relator and that he was never an officer, and sec. 17.03 and sub. (7), sec. 17.03, Stats. 1919, are cited to sustain the contention. These sections provide that:

"Any public office, including offices of cities, villages and school districts, however organized, shall become vacant upon the happening of either of the following events: . . .

"(7) The neglect or refusal of any person elected or appointed or re-elected or re-appointed to any office to take and file his official oath or to execute or renew his official bond, if required, or to file the same or either thereof in the manner and within the time prescribed by law."

Sec. 925—34 is also cited, which provides as follows:

"Every person elected or appointed to any office shall take and file the official oath within ten days after notice of his election or appointment."

No notice of relator's election seems to have been given except such as may be implied from the fact that he entered upon the performance of the duties of the office.

It is stated in the brief of counsel for relator that the testimony closed on October 26th and the court directed the preparation of briefs and fixed the time for argument; that at the time fixed for argument, without previous notice of motion, and when relator was not in court or available as a witness, counsel for defendant was granted permission to amend his answer, against objection, so as to allege that relator had not at any time filed an oath of office. Some testimony was then taken and the person who had been city clerk in 1919 testified that he was then absent in war service; that he could not swear that no oath of office had been filed, but that he could find none. He testified further that none of the files had been lost and that if the oath had been filed it would be in his possession.

In the verified answer it was admitted, among other things, that the city was of the third class and authorized to have the officers and employees provided by law, and among such officers and employees was the city engineer; that on the 3d of February, 1920, by an ordinance the common council fixed the salaries of certain officers and employees, and among others that of city engineer, and that said ordinance had been at all times in force and determined the salary and compensation for the office and employment of the city engineer; that on the 16th of March, 1920, the council adopted a resolution of that date to the effect that "*Arthur Schneider* be and is hereby employed as city engineer of the city of West Allis for the term of one year from the 1st day of April, 1920, to the 1st day of April, 1921;" that pursuant to said election and appointment the relator accepted the office of city engineer and on or about the 1st day of April, 1920, entered into the discharge of the duties thereof, and had at all times performed the duties of said office and had received compensation therefor.

It is contended by relator that these admissions in the verified answer justified the trial court in holding that the oath had been taken and filed, and that the unverified amendment and the testimony on the subject should be disregarded. But there was no admission that the oath had been taken after either election or that relator had qualified; nor was there any such finding by the court. The fact that no oaths were on file was *prima facie* proof that they never had been filed. If they had been taken, it is probable that relator's attorney would have asked opportunity to make the proof and of course the request would have been granted. We are rather reluctantly forced to the conclusion that the oaths were never taken or filed.

The statutes above quoted are very plain. It has been the policy of the state from an early day to require that public officers take an oath of office. It can hardly be claimed that there was no such notice given as is mentioned in sec. 925—34, above mentioned, since the relator performed the duties of the office for over two years. He evidently had notice before he assumed the duties at the beginning of each term. If the statute required a particular officer to give a specified notice we should have a different situation. Nor is this a case where the incumbent of the office has failed temporarily to comply with the statute and has later complied; nor is it the case where there was an oath defective in some respect. In these classes of cases there are decisions in which the neglect of the incumbent has been excused and the statutes have been held directory only. In this state statutes of this character have been held mandatory. The reason for the rule was thus stated in an early case by Mr. Justice COLE:

"It vitally concerns the people in this popular government that the public offices be filled by the duly appointed or elected agents, who act under the responsibility of their oaths of office, and who, in many cases like the present, give bonds for the due and faithful discharge of its duties.

Still a person cannot be forced to accept an office of this kind. He may neglect or refuse to accept it, and forfeit all its rights and privileges; and the statute contemplates that such cases will arise; and ample provision is made for filling the vacancies in the county offices thus existing." *Att'y Gen. ex rel. Spooner v. Elderkin,* 5 Wis. 300, 307. See, also, *State ex rel. Ames v. Southwick,* 13 Wis. 365; *State ex rel. Lutfring v. Gœtze,* 22 Wis. 363; Throop, Pub. Off. § 785; *People ex rel. Williamson v. McKinney,* 52 N. Y. 374; *People ex rel. Judson v. Thacher,* 55 N. Y. 525; *People ex rel. Whiting v. Connor,* 13 Mich. 238.

We are therefore forced to the conclusion that relator was never a *de jure* city engineer of West Allis.

It is argued, however, that he was a *de facto* officer. Of this we have no doubt. He was acting under color of a known and legal election, but had failed to comply with a requirement of the statute. Mechem, Pub. Off. § 317; Throop, Pub. Off. §§ 625, 626; 22 Ruling Case Law, 718.

It is further claimed that, being a *de facto* officer, he can maintain the action against an intruder without right, to regain the office. It is not necessary to consider what right he might have while in possession to resist such an intruder if he had forcibly attempted to evict the relator. But when he surrendered possession he was not a *de jure* officer. If he had been a *de jure* officer the action of *quo warranto* might have availed him to assert his right. In such a proceeding the relator must rely on his own title, and it must be a legal, not merely a colorable, title. Throop, Pub. Off. § 785; 22 Ruling Case Law, 718. See note to *State ex rel. Bornefeld v. Kupferle* (44 Mo. 154) 100 Am. Dec. 265, 269.

Relator contends that under sec. 925—28, Stats. 1919, he had the right to hold the office until a successor duly qualified. Under some conditions this would be true, but he peacefully surrendered the office, although under protest, some time before this action was begun.

Summing up our conclusions, they are as follows: that

Packard M. C. Co. v. Milwaukee E. R. & L. Co. 179 Wis. 159.

when the relator was elected and re-elected the office of city engineer in West Allis was authorized by statute; that the city had taken the necessary steps to create the office; that the relator was duly elected to the office in March, 1920, and was re-elected in March, 1921; that the pretended veto by the mayor in April, 1921, was of no effect; that the defendant was not a citizen of Wisconsin at the time of his pretended election or for one year thereafter; that the relator by neglecting to take and file the oath of office at any time forfeited his right to it and at the time of his exclusion was only an officer *de facto;* that having no legal title to the office he could not be reinstated by *quo warranto.*

It follows that the relator has no cause of action, and judgment should be rendered in favor of defendant.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.